JOSEPH CHAYOON *v.* WILLIAM SHERLOCK ET AL.
(AC 25450)

Bishop, DiPentima and McLachlan, Js.

822

Argued February 17—officially released June 28, 2005

*Joseph Chayoon*, pro se, the appellant (plaintiff).

*Elizabeth Conway*, for the appellees (defendants).

*Opinion*

BISHOP, J. The plaintiff, Joseph Chayoon, appeals from the trial court's judgment dismissing his wrongful termination action against several defendants who were at all relevant times employed by the Mashantucket Pequot Gaming Enterprise at Foxwoods Resort Casino (Foxwoods).[1] On appeal, the plaintiff claims that (1)

---

[1] The Mashantucket Pequot Gaming Enterprise is described as an arm of the Mashantucket Pequot Tribe and not a separate legal entity. The defendants are eight individuals who are or formerly were employed by the Mashantucket Pequot Gaming Enterprise at Foxwoods. We refer to them in this opinion collectively as the defendants.

the court improperly granted the defendants' motion to dismiss and (2) the court's decision should be "vacated" and "declared void" because it was rendered more than 120 days following the short calendar oral argument. We affirm the court's dismissal for lack of subject matter jurisdiction because the defendants are immune from suit.

The following facts, as alleged in the complaint, are relevant to our resolution of this appeal. The plaintiff began work at Foxwoods as a table games supervisor on February 2, 1992. On June 6, 2000, he requested a leave of absence, under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 et seq., to care for his eighty-two year old mother who was seriously ill. Although the plaintiff's request was initially approved, his employment was terminated when he returned to work on August 29, 2000.

Before filing this action, the plaintiff filed two complaints in federal court alleging the same facts as set forth herein, and in each federal action the plaintiff alleged that the defendants had violated the FMLA. The first federal action involved a claim against the Mashantucket Pequot Tribal Nation (tribe) and Foxwoods. It was dismissed for lack of subject matter jurisdiction. *Chayoon v. Mashantucket Pequot Tribal Nation,* United States District Court, Docket No. 3:02CV0163 (D. Conn. May 31, 2002). In the second federal action, the plaintiff sued eighteen individual defendants, including seven members of the Mashantucket Pequot Tribal Council, as well as several other employees, officers and representatives of Foxwoods. *Chayoon v. Reels,* United States District Court, Docket No. 3:02CV1358 (D. Conn. March 21, 2003), aff'd sub nom. *Chayoon v. Chao,* 355 F.3d 141 (2d Cir. 2004), cert. denied sub nom. *Chayoon v. Reels,* 543 U.S. 966, 125 S. Ct. 429, 160 L. Ed. 2d 336 (2004). The second action also was dismissed for lack of subject matter jurisdiction. The court held that the

tribe's sovereign immunity from suit applied to employees of the tribe acting within the scope of their authority.

On September 2, 2003, the plaintiff filed the present action consisting of a one count complaint against eight individual employees of Foxwoods. In the complaint, the plaintiff alleged that the defendants violated the FMLA by terminating his employment at Foxwoods. The defendants in this matter also had been named as defendants in the plaintiff's second federal lawsuit. On October 31, 2003, the defendants in this state action filed a motion to dismiss on the ground that the court lacked subject matter jurisdiction and personal jurisdiction over them. Oral argument on the defendants' motion to dismiss and the plaintiff's objection to it took place on December 1, 2003. After the hearing but before the court issued its decision, the plaintiff, on February 17, 2004, filed a "Petition for Declaratory and Injunctive Relief." In response, the defendants objected to the filing of that pleading, arguing that once the court's jurisdiction has been challenged, the court is required to decide whether it has jurisdiction before considering any other matter in the case. On March 31, 2004, the plaintiff filed a motion requesting that the court stay its decision on the motion to dismiss pending its decision on the petition for declaratory and injunctive relief. Nevertheless, on April 23, 2004, the court granted the defendants' motion to dismiss on the ground that the court lacked subject matter jurisdiction due to tribal sovereign immunity. In its decision, the court held that the doctrine of sovereign immunity acted as a shield protecting the individual defendants from the plaintiff's claim that they had violated proscriptions of the FMLA by terminating his employment at Foxwoods. On May 3, 2004, the plaintiff filed a motion to vacate the order and to reargue in which he claimed that the court's decision should be "null and voided" because it was rendered more than 120 days after it was submitted to

the court for decision. On May 7, 2004, the court denied the motion, noting that the plaintiff had continued to file pleadings with the court until the end of March, 2004. This appeal followed.

I

The plaintiff claims that the court improperly granted the defendants' motion to dismiss on the ground of lack of subject matter jurisdiction because the defendants are not immune from suit. He argues that the defendants are not immune from suit because they are not Indians and were being sued individually, and because in terminating the plaintiff's employment they acted in violation of the FMLA and, therefore, beyond the scope of their authority. In response, the defendants claim that the court lacked subject matter jurisdiction because the doctrine of sovereign immunity protects them from suit. The defendants argue that at the time of the termination of the plaintiff's employment, they were Foxwoods employees, and the plaintiff's claims against them related to conduct undertaken pursuant to their employment responsibilities. The defendants maintain that the court's judgment granting their motion to dismiss should be affirmed on the same ground that was utilized by the federal court in dismissing the plaintiff's identical claims. There, as noted, the court held that the protection of sovereign immunity shields not only the tribe from suit, but it also affords protection from suit to employees of the tribe for conduct by them within the scope of their employment responsibilities. We agree with the defendants.

"In an appeal from the granting of a motion to dismiss on the ground of subject matter jurisdiction, this court's review is plenary. A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its

conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Dontigney* v. *Brown*, 82 Conn. App. 11, 14, 842 A.2d 597 (2004). The trial court's role in considering whether to grant a motion to dismiss is to "take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Arute Bros., Inc.* v. *Dept. of Transportation*, 87 Conn. App. 367, 371, 865 A.2d 464, cert. denied, 273 Conn. 918, 871 A.2d 370 (2005).

"[A]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity . . . and the tribe itself has consented to suit in a specific forum. . . . Absent a clear and unequivocal waiver by the tribe or congressional abrogation, the doctrine of sovereign immunity bars suits for damages against a tribe. . . . However, such waiver may not be implied, but must be expressed unequivocally." (Internal quotation marks omitted.) *Dontigney* v. *Brown*, supra, 82 Conn. App. 17. Although tribal immunity does not extend to individual members of a tribe; *Puyallup Tribe, Inc.* v. *Dept. of Game of Washington*, 433 U.S. 165, 171–72, 97 S. Ct. 2616, 53 L. Ed. 2d 667 (1977); "[t]he doctrine of tribal immunity . . . extends to individual tribal officials acting in their representative capacity and within the scope of their authority. . . . The doctrine does not extend to tribal officials when acting outside their authority in violation of state law." (Citation omitted; internal quotation marks omitted.) *Kizis* v. *Morse Diesel International, Inc.*, 260 Conn. 46, 51 n.7, 794 A.2d 498 (2002). Tribal immunity also extends to all tribal employees acting within their representative capacity and within

the scope of their official authority. *Bassett* v. *Mashantucket Pequot Museum & Research Center, Inc.*, 221 F. Sup. 2d 271, 278 (D. Conn. 2002).

The tribe is a federally recognized Indian tribe; see *Reich* v. *Mashantucket Sand & Gravel*, 95 F.3d 174, 175 (2d Cir. 1996); and "[t]he FMLA makes no reference to the amenity of Indian Tribes to suit." (Internal quotation marks omitted.) *Chayoon* v. *Chao*, supra, 355 F.3d 143. Nevertheless, the plaintiff asserts that the tribe, by its reference to the FMLA in various Foxwoods employment forms that it drafted, has adopted the FMLA and, therefore, has expressly waived its tribal immunity from suit for violations of the FMLA's proscriptions. We are unpersuaded.

"[C]ourts consistently have applied two complementary principles to waivers: (1) a sovereign's waiver must be unambiguous, and (2) a sovereign's interest encompasses not merely whether it may be sued, but where it may sued." (Internal quotation marks omitted.) *Garcia* v. *Akwesasne Housing Authority*, 268 F.3d 76, 86 (2d Cir. 2001) (finding "sue and be sued" clause in tribal housing authority's enabling legislation did not constitute waiver of immunity in federal court). We agree with the trial court, as well as the United States Court of Appeals for the Second Circuit in *Chayoon* v. *Chao*, supra, 355 F.3d 141, that the tribe's employment forms do not provide a clear waiver of sovereign immunity. See, e.g., *C & L Enterprises, Inc.* v. *Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 418–20, 121 S. Ct. 1589, 149 L. Ed. 2d 623 (2001). The tribe has waived its immunity from suit for a variety of employment related claims in the Mashantucket Pequot Tribal Court. The tribe, however, has specifically provided that although it has waived its immunity from suit in the tribal court, it has not waived its immunity for suit in the state and federal courts. See Mashantucket Pequot Tribal Laws, tit. XII, c. 1, § 1 (d) (2). Therefore, the

record does not support the plaintiff's claim that the tribe clearly has waived immunity from suit in Connecticut courts for a purported violation of the FMLA.

Having determined that the tribe has not waived its immunity from suit in regard to any alleged violations of the FMLA, the next issue for our consideration is whether the plaintiff has made a sufficient claim that the defendants acted beyond the scope of their authority so as to denude them of the protection of sovereign immunity. In considering this issue, we find guidance in the well reasoned opinion of the trial court, which held that the plaintiff failed to make out a sufficient claim that the defendants acted beyond the scope of their authority.

"In the tribal immunity context, a claim for damages against a tribal official lies outside the scope of tribal immunity only where the complaint pleads—and it is shown—that a tribal official acted beyond the scope of his authority to act on behalf of the [t]ribe." *Bassett* v. *Mashantucket Pequot Museum & Research Center, Inc.*, supra, 221 F. Sup. 2d 280. "Claimants may not simply describe their claims against a tribal official as in his individual capacity in order to eliminate tribal immunity. . . . [A] tribal official—even if sued in his individual capacity—is only stripped of tribal immunity when he acts manifestly or palpably beyond his authority . . . ." (Internal quotation marks omitted.) Id. "[I]n order to overcome sovereign immunity, the [plaintiff] must do more than allege that the defendants' conduct was in excess of their . . . authority; [the plaintiff] also must allege or otherwise establish facts that reasonably support those allegations." (Internal quotation marks omitted.) *Hultman* v. *Blumenthal*, 67 Conn. App. 613, 624, 787 A.2d 666, cert. denied, 259 Conn. 929, 793 A.2d 253 (2002).

From the facts alleged in the complaint as well as the affidavits submitted to the court, it is evident that

at the time of the termination of the plaintiff's employment, the defendants were Foxwoods employees. The plaintiff claims in his complaint, however, that the individual defendants are being sued in their "personal" capacities as well as in their "professional" capacities. He alleges that by denying him a promotion and then by terminating his employment, the defendants violated the FMLA and tribal policy. The plaintiff claims that because the defendants violated the FMLA, they necessarily acted beyond the scope of their authority and in their individual capacities.

Nothing alleged by the plaintiff, however, suggests that the defendants acted manifestly or palpably beyond their authority in their conduct regarding the termination of his employment. In *Puyallup Tribe, Inc.* v. *Dept. of Game of Washington,* supra, 433 U.S. 165, the United States Supreme Court determined that, when engaged in the conduct of fishing, tribal officials were acting as fishermen rather than as tribal officials and were acting outside the scope of their authority. The court concluded, therefore, that tribal sovereign immunity did not reach tribal officials while they were fishing. Id., 173. In that instance, the tribal officials' conduct was unrelated to the performance of their official duties for the tribe.

In contrast, the complaint against the defendants in the present matter patently demonstrates that in terminating the plaintiff's employment, the defendants were acting as employees of Foxwoods within the scope of their authority. It is insufficient for the plaintiff merely to allege that the defendants violated federal law or tribal policy in order to state a claim that they acted beyond the scope of their authority. See *Bassett* v. *Mashantucket Pequot Museum & Research Center, Inc.,* supra, 221 F. Sup. 2d 280–81. Such an interpretation would eliminate tribal immunity from damages actions because a plaintiff must always allege a wrong or a

violation of law in order to state a claim for relief. In order to circumvent tribal immunity, the plaintiff must have alleged and proven, apart from whether the defendants acted in violation of federal law, that the defendants acted "without any colorable claim of authority . . . ." (Internal quotation marks omitted.) Id., 281. The plaintiff has made no proffer of such conduct here. The plaintiff merely has alleged that he sued the defendants in their personal capacities and that they acted outside of their authority. We conclude that the plaintiff's mere allegation that the defendants violated the FMLA, standing alone, provides an insufficient basis for determining that they have acted outside of their employment authority.[2]

In sum, we agree with the trial court that the plaintiff's allegations are legally insufficient to strip the defendants of the protection of tribal sovereign immunity. On the basis of our conclusion that the doctrine of

---

[2] The plaintiff also appears to claim that the *Ex parte Young* exception to sovereign immunity applies in this case. See *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). Under the doctrine of *Ex parte Young*, prospective injunctive or declaratory relief is available in federal courts against tribal officials when a plaintiff claims an ongoing violation of federal law or claims that a tribal law or ordinance was beyond the authority of the tribe to enact. *Garcia* v. *Akwesasne Housing Authority*, supra, 268 F.3d 87–88. We are not required to determine whether the *Ex parte Young* exception applies in state courts because the doctrine does not apply in this case. In his complaint, the plaintiff sought damages for alleged past violations of the FMLA and tribal policy and procedure. After the defendants filed a motion to dismiss on the ground of sovereign immunity, the plaintiff filed a "petition for declaratory and injunctive relief" on February 17, 2004. The "title of the motion [however] is not conclusive." *Bridgeport* v. *Triple 9 of Broad Street, Inc.*, 87 Conn. App. 735, 741–42, 867 A.2d 851 (2005). Although the plaintiff's motion was denominated as a petition for declaratory and injunctive relief, a reasonable understanding of the relief requested suggests that the plaintiff requested the court to consider and to rule on the merits of his claims regarding damages on the basis of his claims of past violations of federal and tribal law. The motion cannot fairly be understood as one that requests injunctive or declaratory relief. Therefore, the *Ex parte Young* exception to sovereign immunity is not applicable to the plaintiff's action.

sovereign immunity bars the plaintiff's action in this case, we agree with the trial court's determination that it lacked jurisdiction to hear the plaintiff's complaint.

## II

The plaintiff also claims that the judgment should be "vacated" and "declared void" because it was rendered more than 120 days after oral argument in violation of Practice Book § 11-19.[3] We disagree.

Practice Book § 11-19 (b) provides that a party seeking to invoke its provisions must file with the clerk of the court a motion for reassignment "not later than fourteen days after the expiration of the 120 day period . . . ." Section 11-19 (b) also provides that a failure to timely file a motion for reassignment "shall be deemed a waiver by that party of the 120 day time." In the present case, oral argument took place on December 1, 2003. Pursuant to Practice Book § 11-19, the deadline expired on March 30, 2004. The plaintiff filed his motion to vacate the order and to reargue on May 3, 2004, after

---

[3] Practice Book § 11-19 provides: "(a) Any judge of the superior court and any judge trial referee to whom a short calendar matter has been submitted for decision, with or without oral argument, shall issue a decision on such matter not later than 120 days from the date of such submission, unless such time limit is waived by the parties. In the event that the judge or referee conducts a hearing on the matter and/or the parties file briefs concerning it, the date of submission for purposes of this section shall be the date the matter is heard or the date the last brief ordered by the court is filed, whichever occurs later. If a decision is not rendered within this period the matter may be claimed in accordance with subsection (b) for assignment to another judge or referee.

"(b) A party seeking to invoke the provisions of this section shall not later than fourteen days after the expiration of the 120 day period file with the clerk a motion for reassignment of the undecided short calendar matter which shall set forth the date of submission of the short calendar matter, the name of the judge or referee to whom it was submitted, that a timely decision on the matter has not been rendered, and whether or not oral argument is requested or testimony is required. The failure of a party to file a timely motion for reassignment shall be deemed a waiver by that party of the 120 day time."

the motion to dismiss had been decided and more than 120 days after the hearing on the motion. He did not file a motion for reassignment within fourteen days of the 120 day deadline, as is required by Practice Book § 11-19. Accordingly, the plaintiff is deemed to have waived his right to file a motion for reassignment.

The judgment is affirmed.

In this opinion the other judges concurred.