## IWONA DE REPENTIGNY *v.* MICHAEL G. DE REPENTIGNY
## (AC 30548)

Harper, Lavine and Pellegrino, Js.

Argued December 1, 2009—officially released June 1, 2010

*William F. Gallagher*, with whom, on the brief, was *Todd R. Bainer*, for the appellant (plaintiff).

*Michael G. de Repentigny*, pro se, the appellee (defendant).

*Opinion*

HARPER, J. This appeal stems from the judgment dissolving the marriage of the plaintiff, Iwona de

Repentigny, and the defendant, Michael G. de Repentigny. On appeal, the plaintiff claims that (1) the court acted improperly by allowing a lengthy period of time to elapse between the first two days of trial and the last two days of trial, (2) the court improperly refused to permit closing arguments to be made orally, (3) the court improperly failed to find the defendant in contempt for allegedly violating automatic orders and (4) the court's financial orders were unreasonable under the circumstances. We affirm the judgment of the trial court. We address each of the plaintiff's claims in turn, and set forth facts and proceedings that are relevant to the disposition of this appeal as necessary.

I

The plaintiff first claims that the court acted improperly by allowing a lengthy period of time to elapse between the first two days of trial and the last two days of trial. We disagree.

The parties' divorce trial began on February 13, 2008. On that day, the plaintiff, through her counsel, began to present her case and called two witnesses. The first witness was a woman with whom the court found that the defendant had had an ongoing sexual affair during the parties' marriage. Next, the plaintiff's counsel called the plaintiff as a witness. The court recessed before the defendant's counsel could finish her cross-examination of the plaintiff. The following day, February 14, 2008, the defendant's counsel continued her cross-examination of the plaintiff. The plaintiff's counsel began redirect examination but he was unable to finish his examination before the end of the day. The court discussed scheduling the next date for the trial with both parties. The date of March 25, 2008, was initially considered; however, the court stated that it was unsure that this date would allow for enough time to resolve several procedural and discovery issues. The clerk of

the court then suggested April 30, 2008, and June 25, 2008, as potential dates, to which the plaintiff's counsel responded by asking, "Do we have any chance of getting two dates back to back?" Upon the request of the plaintiff's counsel that the trial be rescheduled to a time when two consecutive days would be available, the court scheduled the trial to resume June 25, 2008, noting that June 26 and 27 would also be available if more time was required.

At the time of the court's ruling, neither the plaintiff nor her counsel made any objection to waiting until June 25, 2008, to continue the trial. No objection was filed with the court between February 14 and June 25, 2008. The trial resumed on the morning of June 25, 2008. At this time, the plaintiff's counsel made an oral motion for a mistrial. The plaintiff's counsel argued that because he had already presented a major part of the plaintiff's case on the first two days of trial, the defendant, having had several months to "look at [the plaintiff's] case and prepare for trial," was at an "advantage." The court orally denied the motion for a mistrial. The plaintiff's counsel raised the objection once more that day, during the defendant's counsel's recross-examination of the plaintiff. In response, the court made the following statement: "You're not going to get a mistrial based on a continuance. Unfortunately, many family trials span a lot more time than the judges wish."

Although the plaintiff, in her brief, concedes that "there is no Connecticut statute or rule which *per se* prohibits such an inordinate delay in the conclusion of a trial"; (emphasis in original); she nevertheless claims on appeal that the delay in the middle of her divorce trial violated her right, under article first, § 10, of our state constitution to have "justice administered without sale, denial or delay." "[T]he matter of a continuance is traditionally within the discretion of the trial judge which will not be disturbed absent a clear abuse."

(Internal quotation marks omitted.) *State* v. *Williams*, 200 Conn. 310, 320, 511 A.2d 1000 (1986). Although the plaintiff attempts to frame the issue of the length of the continuance as a constitutional claim, in *Williams* our Supreme Court held that not every determination regarding a continuance violates due process. Thus, the propriety of a continuance "is to be found in the circumstances present in every case." Id. To establish an abuse of discretion as to a court's determination in regard to a continuance, the plaintiff must show that her ability to present her case was prejudiced demonstrably by the length of the continuance. See *State* v. *Day*, 233 Conn. 813, 847, 661 A.2d 539 (1995).

As the defendant notes in his brief, the court proposed earlier dates on which to reconvene the trial, but it was *the plaintiff's counsel* who expressed a preference for scheduling the trial at a time when two consecutive days were available. Taking the plaintiff's preference into consideration, the court accommodated her and scheduled the next day of the trial on a date when three consecutive days were available if needed. Although the plaintiff has claimed that the defendant was given a tactical advantage, she has not indicated any specific instances of prejudice resulting from the length of the continuance. Accordingly, we hold that the court did not abuse its discretion.

## II

The court denied the request of the plaintiff's counsel to make an oral closing argument. On appeal, the plaintiff claims that the court's refusal was in violation of our rules of practice. We disagree.

In her brief submitted to this court, the plaintiff notes that Practice Book § 15-5 (a) (4)[1] states that "[t]he plaintiff shall be entitled to make the opening and final closing arguments." The plaintiff, however, has neglected

---

[1] Practice Book § 25-54 provides that Practice Book § 15-5 shall apply to family matters.

to include the introductory language of the rule, which states: "Unless the judicial authority *for cause permits otherwise*, the parties shall proceed with the trial and argument in the following order . . . ." (Emphasis added.) Practice Book § 15-5 (a). Thus, when the previously discussed language is read together, Practice Book § 15-5 (a) actually reads as follows: "Unless the judicial authority for cause permits otherwise, the parties shall proceed with the trial and argument in the following order . . . (4) The plaintiff shall be entitled to make the opening and final closing arguments. . . ."

The interpretation of rules of practice and statutes is a question of law subject to plenary review. *Tocco* v. *Wesleyan University*, 112 Conn. App. 28, 31, 961 A.2d 1009 (2009). Subdivisions (1) through (5) of Practice Book § 15-5 (a) prescribe a certain procedure to be followed in civil trials and family matters. The clear import of the introductory language is that the court may depart from this prescribed trial procedure "for cause . . . ." Practice Book § 15-5 (a). Therefore, in civil and family cases, a trial court may, for cause, elect to accept legal briefs in lieu of oral closing arguments.

We have held previously that, when considering whether there was cause for a court to change the *order* of arguments prescribed in Practice Book § 15-5 (a), we review the decision of the court under the abuse of discretion standard. In *Dinan* v. *Marchand*, 91 Conn. App. 492, 881 A.2d 503 (2005), aff'd, 279 Conn. 558, 903 A.2d 201 (2006), this court held that a plaintiff "bears a heavy burden in demonstrating that the court abused its broad discretion in its ordering of closing arguments. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) Id., 507.

In light of this precedent, and given the fact that the departure from procedure involves the same rule of practice contemplated by the court in *Dinan*, we conclude that our review of whether the court had cause to accept briefs in lieu of oral argument also should be made using the abuse of discretion standard.

The parties met on July 7, 2008, to discuss several posttrial matters. The plaintiff's trial counsel informed the court that he wanted to make oral closing arguments. The court offered to allow counsel to make a closing argument on July 14, 2008, the date on which the court had ordered posttrial briefs to be submitted. The defendant's trial counsel then indicated to the court that she believed that closing arguments, in addition to the posttrial briefs, would be cumulative and unnecessary. The court indicated its preference to conclude the trial expeditiously, given the lengthy period of time that had elapsed between the first two days of trial and the final two days of trial, and expressed concern about unnecessarily prolonging the process in order to find a date on which counsel for both sides would be available to appear. Given our determination that the trial court's decision is to be afforded every reasonable presumption in favor of its correctness, we find that any of the aforementioned reasons reasonably justified the court's decision not to allow oral closing arguments and instead to accept posttrial briefs. Accordingly, we conclude that the court did not abuse its discretion in accepting briefs in lieu of oral closing arguments.

### III

The plaintiff next claims that the court improperly declined to hold the defendant in contempt for violating the automatic order provisions of Practice Book § 25-5. Specifically, the plaintiff alleges that the defendant violated the automatic orders by withdrawing approximately $50,000 from the parties' joint accounts after

she had commenced this dissolution action. We decline to review this claim.

"It is the appellant's responsibility to provide an adequate record for review. Practice Book § 60-5. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. . . . Practice Book § 61-10. Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did. . . . An appellant's utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *Gilbert* v. *Gilbert*, 73 Conn. App. 473, 476–77, 808 A.2d 688 (2002).

Practice Book § 25-5 (a) provides in relevant part: "The following automatic orders shall apply to both parties, with service of the automatic orders to be made with service of process of a complaint for dissolution of marriage . . . (1) Neither party shall sell, transfer, encumber . . . conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with this action. . . ." On October 31, 2007, the plaintiff filed a motion for contempt, alleging

that the defendant had "unilaterally misappropriated" joint marital assets. It is well established that "[a] court must decline to hold a party in contempt if the facts are not established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Internal quotation marks omitted.) *Gilbert* v. *Gilbert*, supra, 73 Conn. App. 477 n.2. Also, a court may, in its sound discretion, "deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 718, 784 A.2d 890 (2001).

In its September 11, 2008 memorandum of decision, the court summarily denied the plaintiff's request to hold the defendant in contempt. The court found: "There is no evidence that the plaintiff established each of the elements required for such a [finding of contempt]." The court did not explain the rationale it used to determine that the defendant was not in contempt, and the plaintiff did not file a motion for articulation. Therefore, we have no record that would permit us to review the factual basis of the court's decision. Because the plaintiff has failed to establish through an adequate record that the court incorrectly applied the law or could not reasonably have concluded as it did, we decline to review this claim.

## IV

The plaintiff next claims that the court's financial orders constituted an abuse of discretion. We disagree.

The plaintiff takes issue with several specific orders issued by the court in its dissolution judgment. In its memorandum of decision, the court awarded the defendant ownership of a business that the parties had operated together for eleven years called "de Assembly." The court granted the plaintiff time limited alimony

and, as part of this order, instructed the defendant to pay one half of the net income of de Assembly to the plaintiff in addition to a sum of $650 per week for a period of five years. The plaintiff claims that the court's orders were unreasonable "because the effect of the combined orders was to leave the plaintiff with an inability to provide financially for herself while at the same time denying an award of lifetime alimony to her." We disagree.

First we set forth our standard of review. "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Citations omitted; internal quotation marks omitted.) *Quasius* v. *Quasius*, 87 Conn. App. 206, 208, 866 A.2d 606, cert. denied, 274 Conn. 901, 876 A.2d 12 (2005).

"Time limited alimony is often awarded. [Our Supreme Court] has dealt with challenges to an award of time limited alimony on numerous occasions. . . . The trial court does not have to make a detailed finding justifying its award of time limited alimony. . . . Although a specific finding for an award of time limited

alimony is not required, the record must indicate the basis for the trial court's award. . . . There must be sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand. . . . In addition to being awarded to provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency, time limited alimony is also appropriately awarded to provide interim support until a future event occurs that makes such support less necessary or unnecessary." (Internal quotation marks omitted.) *Radcliffe* v. *Radcliffe*, 109 Conn. App. 21, 29, 951 A.2d 575 (2008).

In the present case, the court found that the plaintiff, a forty year old high school graduate, is "bright, articulate and motivated. She is capable of finding meaningful employment." The court went on to find that "[b]ased upon the statutory factors, including the ages of the parties, their education, earnings, as well as the length of the marriage, health, the causes for the breakdown of the marriage, retirement assets and work experience, a time limited alimony award is appropriate." The court's ruling reflects that it properly considered the relevant criteria.

In regard to its decision to grant ownership of de Assembly to the defendant, the court found that "[t]hroughout the marriage, although both parties made contributions to the acquisition, maintenance and reservation of this asset, the evidence clearly supports a finding that the defendant's contribution was significantly greater." Given the court's findings regarding the level of the respective parties' involvement with and management of de Assembly, and the inherent difficulty one could expect were a divorced couple required to

operate a business together, we will not second-guess the court's decision to grant ownership of de Assembly to the defendant.

The plaintiff also claims that the court's judgment was unreasonable because by "[ordering] that the plaintiff forfeit half of any earnings which she may realize should she attempt to start a business similar to that of de Assembly, [the court deprived] the plaintiff of the ability to support herself." The plaintiff's argument in this regard is in reference to the section of the court's decision concerning ownership of de Assembly, which states: "Should the plaintiff establish a business similar to de Assembly, she shall forfeit her receipt of one half of the net proceeds therefrom." In her brief, the plaintiff interprets this sentence to mean that should she establish a business similar to de Assembly, she is required to pay to the defendant one half of the proceeds she receives from her new business. Accordingly, she claims that "[a]t a minimum, the trial court should have crafted its order discouraging the plaintiff from starting up a competing business with a reasonable length of time and geographic range limitations included in the order."

During oral argument before this court, the plaintiff's appellate counsel conceded that he may have read the judgment incorrectly and that the court could have intended, in its usage of the phrase "proceeds therefrom," to refer to the proceeds that the plaintiff was to receive from de Assembly as part of her time limited alimony. Given the central role that the plaintiff's interpretation of this order plays in the plaintiff's general claim that the court's orders as a whole were unreasonable, it is incumbent on us to construe the court's order. "[T]he construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written

instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as that which is expressed. . . . In doing so, it assists a reviewing court to keep in mind the theory on which the case was tried and on which the trial court decided it." (Citations omitted; internal quotation marks omitted.) *Steiner* v. *Middlesex Mutual Assurance Co.*, 44 Conn. App. 415, 428, 689 A.2d 1154 (1997).

On the basis of the court's findings supporting its division of property and the time limited alimony award, we conclude that the phrase "one half of the net proceeds therefrom" refers to one half of the net proceeds that the plaintiff is to receive from de Assembly as part of her time limited alimony. The plaintiff's interpretation of the court's order, posited in her brief, as a general noncompetition requirement of indeterminate length, is incongruous with the expressed general intent of the judgment that the plaintiff continue to receive a benefit from de Assembly for a limited period of time. Due to the court's determination that the plaintiff should continue to receive a financial benefit from de Assembly, it is entirely sensible that the court required her to forfeit such benefit should she engage in a competing enterprise. The plaintiff may engage in a similar business at the peril of forfeiting her alimony award as it pertains to the proceeds of de Assembly. Based on our interpretation of the court's order regarding the plaintiff's ability to engage in a competing enterprise, the plaintiff's argument that this particular order contributed to the overall unreasonableness of the judgment is premised on an incorrect interpretation of the court's judgment. Given the court's findings supporting its division of property and the time limited alimony

award, and our interpretation of the court's order regarding the plaintiff's ability to engage in an enterprise that competes with de Assembly, we conclude that the court did not abuse its discretion in issuing its financial orders.

The judgment is affirmed.

In this opinion the other judges concurred.