APRYL R. MORRONE *v.* GARY J. MORRONE
(AC 33382)

DiPentima, C. J., and Beach and Sullivan, Js.

Argued October 15, 2012—officially released April 30, 2013

*Alfred F. Morrocco, Jr.*, for the appellant (defendant).

*Patrick Tomasiewicz*, for the appellee (plaintiff).

*Opinion*

PER CURIAM. In this contested marital dissolution action, the defendant, Gary J. Morrone, appeals from the judgment of the trial court with respect to several of the court's financial orders and the court's order awarding sole legal and physical custody of the parties' two minor children to the plaintiff, Apryl R. Morrone. The defendant claims that the court abused its discretion by making its financial and custody determinations against the weight of the evidence. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiff and the defendant were

married on October 21, 1994. They have two sons, one born in April, 1998, and the other born in February, 2004.[1] On October 14, 2010, after a trial lasting several days, the court rendered judgment dissolving the parties' marriage, entering several financial orders and granting sole physical and legal custody of the two children to the plaintiff.

In its memorandum of decision, the court made the following financial orders relevant to this appeal: (1) that the plaintiff receive 65 percent and the defendant receive 35 percent of the marital assets; (2) that the defendant pay $197 per week in child support for the two minor children; (3) that the defendant pay $2567 in child support, which was in arrears at the time of trial; (4) that the defendant pay 60 percent and the plaintiff pay 40 percent of the $15,496 in guardian ad litem fees; (5) that the marital home be sold and the proceeds divided equally between the parties after the first $40,000[2] is paid to the plaintiff to repay what the court found was a loan from her parents for the purchase of the lot for the second marital home; (6) that the defendant repay to the plaintiff from his share of the sale proceeds of the marital home $9700 for protecting his equity by paying his share of the mortgage during the pendente lite period and $4000 in attorney fees from that period; and (7) that the plaintiff retain sole possession of the entire $28,000 in her 401 (k) account. In awarding sole physical and legal custody of the children to the plaintiff, the court also made several orders regarding visitation rights for the defendant and parenting time during weekends, vacations and holidays. This appeal followed.

---

[1] The defendant also has a daughter from a previous relationship, who at the time of dissolution was younger than eighteen years old.

[2] The record reflects that the plaintiff's parents also provided $1000 as a deposit for the purchase of the lot, but the court's order requires repayment of only $40,000.

On appeal, the defendant challenges the above financial orders and the custody order.[3] Central to his multiple claims is his argument that the court improperly disregarded evidence provided by the defendant and placed too much weight on evidence or testimony from the plaintiff. For the reasons discussed herein, we disagree.

## I

We first address the defendant's challenge of the financial orders. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." (Internal quotation marks omitted.) *Tracey* v. *Tracey*, 97 Conn. App. 122, 124, 902 A.2d 729 (2006). "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in . . . dividing property as long as it considers all relevant statutory criteria." (Internal quotation marks omitted.) *de Repentigny* v. *de Repentigny*, 121 Conn. App. 451, 460, 995 A.2d 117 (2010); see General Statutes § 46b-81. "[W]e are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Watrous* v. *Watrous*, 108 Conn. App. 813, 818, 949 A.2d 557 (2008). In deciding whether the court has abused its broad discretion in such decisions, "we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Internal quotation

---

[3] The defendant also claimed that the court erred in awarding all of the contents of the marital home to the plaintiff and not awarding the defendant certain personal property. During oral argument before this court, the defendant abandoned that claim.

marks omitted.) *Casey* v. *Casey*, 82 Conn. App. 378, 383, 844 A.2d 250 (2004).

On two of the defendant's financial claims, he argues that the court did not have evidence in the record to support the findings that it made.

First, the defendant argues that there was no evidence to justify the court's finding that the $22,000 credit from the defendant's parents toward the couple's first home was a gift, but the $41,000[4] from the plaintiff's parents toward the purchase of the lot for the second home in Harwinton was a loan. This is clearly contradicted by the record. The court had before it uncontroverted testimony and documentary evidence that the $22,000 was a gift. In contrast to that, the court heard uncontroverted testimony from the plaintiff and her mother that the $41,000 from the plaintiff's parents was a loan.[5]

Second, the defendant argues that the court deviated from the presumed amount of child support called for in the child support guidelines without providing the justification required by General Statutes § 46b-215b (a). See *Savage* v. *Savage*, 25 Conn. App. 693, 698, 596 A.2d 23 (1991) ("unless there is a specific finding on the record that would allow the presumption to be rebutted, child support awarded must be in the amount provided by the guidelines"). In its memorandum of decision, however, the court found the defendant's imputed income, based on his social security earnings statement, to be $51,000. The court also found that the defendant had other potential sources of income and

---

[4] See footnote 2 of this opinion.

[5] The defendant argued that the federal Department of Housing and Urban Development settlement form associated with the Harwinton property did not list the $41,000 from the parents as a loan, and that nothing in writing supports the claim that it was a loan. The record, however, reveals no such form associated with that house or any other evidence to contradict testimony that the money from the plaintiff's parents was not a loan.

that since losing his job in 2008, he had made little effort to find work. Moreover, the defendant acknowledged during oral argument before this court that given a finding of $51,000 of imputed income, $197 per week in child support fell properly within the guidelines. Given these explicit findings and the defendant's concession, we cannot conclude that the court abused its discretion in awarding child support in the amount of $197 per week.

On the remaining financial claims, the defendant does not argue that the court did not have evidence in the record for its findings. Instead, he argues that the court gave too much weight to some evidence and not enough to other evidence, nearly all related to the defendant's earning ability and income. "Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Tracey* v. *Tracey*, supra, 97 Conn. App. 125. "That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Internal quotation marks omitted.) *Desai* v. *Desai*, 119 Conn. App. 224, 237–38, 987 A.2d 362 (2010).

The court made a number of findings about the reasons for the breakdown of the marriage, the parties' financial situations and earning abilities, the state of the marital assets, debts owed by the parties together and to each other and payments toward those debts.

Those findings were based on testimony from the parties, family members, the family relations officer and the guardian ad litem, as well as documents in the record. The court explained the findings upon which each order was based. On the entire evidence, we are not "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Tracey* v. *Tracey*, supra, 97 Conn. App. 125.

II

We next address the defendant's claim that the court abused its discretion by awarding sole physical and legal custody to the plaintiff. The defendant argues that the court ignored evidence in support of joint custody and placed too much weight on evidence that supported the plaintiff's request for sole custody. General Statutes § 46b-56 (c) provides in relevant part that when making custody orders, "the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of [sixteen listed factors] . . . The court is not required to assign any weight to any of the factors that it considers." "In reaching a decision as to what is in the best interests of a child, the court is vested with broad discretion and its ruling will be reversed only upon a showing that some legal principle or right has been violated or that the discretion has been abused." (Internal quotation marks omitted.) *Stahl* v. *Bayliss*, 98 Conn. App. 63, 68, 907 A.2d 139, cert. denied, 280 Conn. 945, 912 A.2d 477 (2006).

The court based its findings on testimony from the parties, the family relations officer and the guardian ad litem regarding the reasons for the breakdown of the marriage, each parent's role in the upbringing and care of the two children and specific aspects of the defendant's behavior that it considered relevant to the custody decision. The court noted that it had considered

the criteria for making custody orders contained in § 46b-56 (c). Specifically, it considered the family relations officer's recommendation that the parents share joint custody and the guardian ad litem's recommendation that the plaintiff have sole custody, and it noted the reasons for its decision to reject the family relations officer's recommendation. See *Yontef* v. *Yontef*, 185 Conn. 275, 281, 440 A.2d 899 (1991) (trial court not bound to accept expert opinion of family relations officer).

The report and testimony of the family relations officer and the guardian ad litem's testimony provide abundant evidence—specifically with respect to the defendant's conduct—along with the guardian ad litem's specific recommendation, for the court's finding that awarding sole custody to the plaintiff was in the best interest of the children.

The judgment is affirmed.